## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **JILL GORDON as Trustee for the Next of Kin** **of Ryan Martin, Deceased** | § § § | |
| **Plaintiff,** | § § | Civil Action No._____ |
| **VS.** | § § | **JURY TRIAL DEMANDED** |
| **SAPPI NORTH AMERICA, INC., ET AL** | § § § | |
| **Defendants.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, **JILL GORDON, as Trustee for Next of Kin of Ryan Martin, Deceased,** by and through undersigned counsel and files this Original Complaint against Defendants herein, and each of them, and alleges as follows:

### PARTIES

1.     **RYAN MARTIN, DECEASED** was a resident and citizen of Duluth, St. Louis County, Minnesota at all relevant times, including at the time of his death on May 15, 2018.

2.     Plaintiff, **JILL GORDON**, a resident and citizen of Duluth, St. Louis County, Minnesota, has been duly appointed as Trustee for the next-of-kin of her brother, Ryan Martin, Deceased. Plaintiff, **JILL GORDON** brings this action on behalf of the next-of-kin of Ryan Martin, Deceased, pursuant to Minn. Stat. § 573.02.

3.     Defendant **SAPPI NORTH AMERICA, INC.** was and is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Boston, Massachusetts, and based upon information is a parent and/or related but separate corporation of and from Defendants, Sappi Limited and Sappi Cloquet LLC and was conducting

business in the State of Minnesota independently, and by and through its affiliated companies

and/or subsidiaries at the Sappi Cloquet mill and facilities in Cloquet, Carlton County, Minnesota,

at the time and place of where the events made the basis of this lawsuit occurred, and may be

served with process by serving its registered agent: CT Corporation System, 1010 Dale St. N, St.

Paul, Minnesota 55117.

3.      Defendant **SAPPI CLOQUET, LLC** (hereafter, referred to as "Sappi Cloquet") is

a limited liability company that was and is conducting business in the State of Minnesota

independently, and by and through its affiliated companies and/or subsidiaries at its Cloquet mill

and facilities in Cloquet, Carlton County, Minnesota, at the time and place of where the events

made the basis of this lawsuit occurred. Upon information and belief, the members of Sappi

Cloquet LLC are not citizens of the State of Minnesota, and it may be served with process by

serving its registered agent: Corporation Service Company, 2345 Rice Street, Suite 230, Roseville,

MN 55113.

4.      Defendant **SAPPI FINE PAPER AMERICA LLC** is a limited liability company

that was and is conducting business in the State of Minnesota independently, and by and through

its affiliated companies and/or subsidiaries at its Cloquet mill and facilities in Cloquet, Carlton

County, Minnesota, at the time and place of where the events made the basis of this lawsuit

occurred. Upon information and belief, the members of Sappi Fine Paper America LLC are not

citizens of the State of Minnesota, and it may be served with process at: 255 State St., Boston,

Massachusetts 02109.

5.      Defendant **SAPPI LIMITED** (hereafter, also referred to as "Sappi Ltd.") was and

is a corporation organized and existing under the laws of the Republic of South Africa with its

principal place of business in Johannesburg, South Africa, and based upon information is a parent

2

and/or related company of Defendants, Sappi North America, Inc. and Sappi Cloquet and was conducting business in the State of Minnesota independently and/or by and through its affiliated companies and subsidiaries at the Sappi Cloquet mill and facilities in Cloquet, Carlton County, Minnesota, at the time and place of where the events made the basis of this lawsuit occurred.

6.      Defendant **S.D. WARREN COMPANY** was and is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Boston, Massachusetts, and was conducting business in the State of Minnesota independently, and by and through its affiliated companies and subsidiaries at the Sappi Cloquet mill and facilities in Cloquet, Carlton County, Minnesota, at the time and place of where the events made the basis of this lawsuit occurred, and may be served with process by servings its registered agent: CT Corporation System, 1010 Dale St. N, St. Paul, Minnesota 55117.

7.      Defendant **S.D. WARREN SERVICES COMPANY** was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts, and was conducting business in the State of Minnesota independently, and by and through its affiliated companies and subsidiaries at the Sappi Cloquet mill and facility in Cloquet, Carlton County, Minnesota, at the time and place of where the events made the basis of this lawsuit occurred, and may be served with process by serving its registered agent: CT Corporation System, 405 2nd Ave S, Minneapolis, MN 55401.

8.      Defendant, **S.D. WARREN CORPORATION f/k/a S.D. Warren Services Company**, was and is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Boston, Massachusetts, and was conducting business in the State of Minnesota independently, and by and through its affiliated companies and subsidiaries at the Sappi Cloquet mill and facility in Cloquet, Carlton County, Minnesota, at the

**3**

time and place of where the events made the basis of this lawsuit occurred, and may be served with

process by serving its registered agent: CT Corporation System, 405 2nd Ave S, Minneapolis, MN

55401.

9.      Defendant, **S. D. WARREN ALABAMA, LLC d/b/a Sappi Fine Paper North

America**, is a limited liability company that was and is conducting business in the State of

Minnesota independently, and by and through its affiliated companies and/or subsidiaries at its

Cloquet mill and facilities in Cloquet, Carlton County, Minnesota, at the time and place of where

the events made the basis of this lawsuit occurred. Upon information and belief, the members of

S.D. Warren Alabama, LLC are not citizens of the State of Minnesota, and it may be served with

process at: 2000 Interstate Pk. Dr., Ste. 204, Montgomery, AL 36109.

10.      Defendant **POTLATCHDELTIC CORPORATION f/k/a Potlatch Corporation**

was and is a corporation organized and existing under the laws of the State of Delaware with its

principal place of business in Spokane, Washington, and was conducting business in the State of

Minnesota independently, and by and through its affiliated companies and subsidiaries in Cloquet,

Carlton County, Minnesota, at the time and place of where the events made the basis of this lawsuit

occurred, and may be served with process by serving its registered agent: United Agent Group

Inc., 5200 Wilson Road #150, Edina, Minnesota 55424.

11.      Defendant **POTLATCHDELTIC FOREST HOLDINGS, INC. f/k/a Potlatch

Forest Holdings, Inc.** was and is a corporation organized and existing under the laws of the State

of Delaware with its principal place of business in Spokane, Washington, and was conducting

business in the State of Minnesota independently, and by and through its affiliated companies and

subsidiaries in Cloquet, Carlton County, Minnesota, at the time and place of where the events made

**4**

the basis of this lawsuit occurred, and may be served with process by serving its registered agent: United Agent Group Inc., 5200 Wilson Road #150, Edina, Minnesota 55424.

12. Defendant **POTLATCH CORPORATION** was and is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Boston, Massachusetts, and was conducting business in the State of Minnesota independently, and by and through its affiliated companies and subsidiaries at its Cloquet mill and facility in Cloquet, Carlton County, Minnesota, at the time and place of where the events made the basis of this lawsuit occurred, and may be served with process by serving its registered agent: United Agent Group Inc., 5200 Wilson Road #150, Edina, Minnesota 55424.

13. Defendant **POTLATCH FOREST HOLDINGS, INC.** was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Spokane, Washington, and was conducting business in the State of Minnesota independently, and by and through its affiliated companies and subsidiaries in Cloquet, Carlton County, Minnesota, at the time and place of where the events made the basis of this lawsuit occurred, and may be served with process by serving its registered agent: United Agent Group Inc., 5200 Wilson Road #150, Edina, Minnesota 55424.

14. Defendants, **JOHN DOE PREMISE OWNERS, CONTROLLERS, AND/OR OPERATORS I-X, JOHN DOE "SAPPI FINE PAPER" ENTITY(IES) I-X, JOHN DOE "SAPPI FINE PAPER NORTH AMERICA" ENTITY(IES) I-X, JOHN DOE "SAPPI NORTH AMERICA" ENTITY(IES) I-X,** and **JOHN DOE ENTITY(IES) WITH CONTROL OVER THE SAPPI CLOQUET, MINNESOTA MILL'S BUDGETS RELATING TO ENGINEERING CONTROLS & SAFETY EQUIPMENT RELATED TO HYDROGEN SULFIDE HAZARDS AND/OR EMISSIONS I-X, JOHN DOE ENTITY(IES) WHO**

**ASSUMED DUTIES FOR WORKER HEALTH AND SAFETY REGARDING HAZARDS OF HYDROGEN SULFIDE GAS I-X** are fictitious names of unknown corporations, partnerships, and business entities including but not limited to limited liability companies, persons, agents, servants, and/or employees whose true names are unknown to the Plaintiff at the present time and whose actions or inactions are a proximate cause of Ryan Martin's death and Plaintiff's damages herein, including but not limited to:

A. Owners and operators of the paper and pulp mill equipment Cloquet, Minnesota, commonly known as the Sappi mill that was involved in the occurrence made the basis of this suit;

B. Owners of the real property and fixtures attached thereto, known as the Sappi paper and pulp mill in Cloquet, Minnesota where the incident occurred;

C. All companies, entities, or persons who exercised ultimate control, in whole or part, over the financial affairs and/or budget of the Sappi Mill and property and/or Decedent's employer with respect to matters and/or decisions regarding capital improvements, expenditures, and other budgetary matters relating to engineering controls, safety equipment, and health and safety training, maintenance, or repair of and/or proper personal protective equipment in relation to reduction and/or detection of hydrogen sulfide gas and worker protection from over-exposures to hydrogen sulfide.

D. Construction companies, contractors, architects, engineers, and other entities and/or persons who, within the last 10 years, including but not limited to the modernization of the mill in 2013, designed, constructed, installed, built, and/or modified any of the units, buildings, tanks, pumps, valves, detectors, alarms and/or equipment that

were subsequently involved in the hydrogen sulfide release event that occurred on

May 15, 2018 at the paper and pulp mill in Cloquet, Minnesota, commonly known

as the Sappi mill.

15.     The aforementioned "John Doe" Defendants do not include any entities that are

citizens of the State of Minnesota. When the true names of such corporations, entities, persons,

agents, servants, and/or employees become known, Plaintiff may seek to amend this Complaint.

## JURISDICTION & VENUE

16.     The Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §1332(a), as the parties are completely diverse in citizenship and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a

substantial part of the events giving rise to Plaintiff's claims and causes of action occurred in this

judicial district.

## FACTUAL ALLEGATIONS

18.     Defendants and/or their affiliated companies owned, operated, and/or controlled, in

whole or part, the real property, fixtures, equipment and facilities known as the Sappi paper and

pulp mill in Cloquet, Carlton County, Minnesota ("the mill").

19.     Based upon information and belief, Defendant, Sappi acquired the mill from

Defendant, Potlatch Corporation in 2002. Defendant, Potlatch Forest Holdings Inc. n/k/a

Defendant, PotlatchDeltic Forest Holdings, Inc. was the owner of the real property (and fixtures,

equipment, and appurtenances attached thereto) upon which the mill is located at the time and

place of the occurrence.

20.     At the time of the occurrence, the employer listed on Ryan Martin, decedent's, paycheck was Defendant, Sappi Cloquet LLC, however, the worker's compensation claim filings by the carrier identify Ryan Martin, decedent's, employer as "Sappi Fine Paper." "Sappi Fine Paper" and "Sappi Fine Paper North America," are fictitious names that have been used by various SAPPI and S.D. Warren entities over the years. However, neither "Sappi Fine Paper" and "Sappi Fine Paper North America" is currently registered as a fictitious name for any entity doing business in Minnesota. Plaintiff will show that Defendant, Sappi North America Inc. was not the employer of Ryan Martin, deceased, at the time of the occurrence.

21.     Based upon information and belief, Defendants Sappi Ltd., Sappi North America, and/or Sappi Cloquet, independently, and/or as agent of the Potlatch Defendants, maintained and/or operated the mill at the time and place of the events made the basis of this lawsuit.

22.     As a result of the process and operations at the mill, it was known by Defendants that the highly toxic and poisonous gas known as hydrogen sulfide would exist and be present at the mill as a result of certain processes and operations.

23.     Because it was foreseeable that hydrogen sulfide would be present at the mill, hydrogen sulfide detectors were installed which were designed to trigger alarms when the levels of hydrogen sulfide gas reached certain levels in the air.

24.     On May 15, 2018, Ryan Martin, decedent, was working in his maintenance job as an invitee and entrant at the mill. His job assignment required him to work in the upper area of one of the buildings repairing belts on a vent fan on the mill property.

25.     Also on May 15, 2018, other workers at the mill were performing an acid wash, back flushing filters and when the acid mixed with the "White Liquor," hydrogen sulfide gas was

created and over-pressurized the vessel causing a release of hydrogen sulfide gas into the atmosphere and immediate area where Ryan Martin was working.

26.     As a result, the hydrogen sulfide alarms were activated at approximately 11:00 a.m., and said alarms sounded for several minutes thereafter.

27.     Ryan Martin was later found dead by one of his coworkers near his work area where the release of hydrogen sulfide gas occurred.

28.     An autopsy was performed upon Ryan Martin, decedent's body and based upon incomplete and/or inaccurate data from a Defendant and/or Defendants, the Medical Examiner initially determined the manner of Ryan Martin's death to be "natural causes" due to atherosclerotic coronary artery disease.

29.     Months later, the urine of Ryan Martin, decedent, which had been collected and preserved by the Medical Examiner at the time of autopsy, but never tested for hydrogen sulfide or its metabolite thiosulfate, was sent to an independent laboratory by the Medical Examiner for testing, which found extremely elevated levels of thiosulfate in decedent's urine. Based upon this finding of irrefutable evidence of hydrogen sulfide toxicity, in July 2019 the Medical Examiner amended her findings and autopsy report to reflect the manner of death and cause of death of Ryan Martin, decedent, to state "Accident," "Hydrogen Sulfide Toxicity." The decedent's death certificate was amended to reflect this correction, which was issued on August 5, 2019, listing cause of death as Hydrogen Sulfide Toxicity. Prior to the test results finding elevated thiosulfate in his urine and opinions of health professionals interpreting them, Plaintiff was not aware of and could not have discovered the nature of Ryan Martin's death, that his death was occupationally related, or that Ryan Martin had suffered an actionable injury in the form of his wrongful death. Rather, prior to the test results and interpretation by health professionals, Plaintiff had been

erroneously and falsely led to believe by Defendants and the medical examiner that the manner of Ryan Martin's death was a wrongful death, but was the result of natural causes.

## PLAINTIFF'S CAUSES OF ACTION

**Count 1: Defendants' Negligence**

30.     Plaintiff would show that Defendants herein, acting by and through their agents, directors, representatives, managers, affiliates, and/or employees, are guilty of certain acts, wrongs, and/or omissions that amount to negligence and that such negligence was a proximate cause of Ryan Martin's death and the damages set forth herein. Plaintiff would show that Defendants as owners and/or possessors in control of the mill owed to Ryan Martin, decedent, a duty to use reasonable care in the ownership, operation, inspection, and maintenance of the mill, its equipment and fixtures thereon, and/or the training, warning, and education of workers regarding the presence and/or hazards of hydrogen sulfide gas and that Defendants breached said duties which resulted in hydrogen-sulfide-related death of the Decedent.

31.     Plaintiff would show that the Defendants, independently or in combination with one another, were negligent in the following ways, among others:

        a) Engaging in negligent activities by allowing and/or causing workers to work in areas during times when it was foreseeable that hazardous levels of hydrogen sulfide (H2S) gas would exist or be created;

        b) Engaging in negligent activities by allowing and/or causing workers to do jobs when Defendants knew or should have known that H2S gas would be created at a time when other workers doing other jobs were in the immediate zone of danger;

c) Permitting work that was known, or that should have been known, to generate H2S gas in an area and at a time when it was unreasonable to permit such work;

d) Failing to timely and/or properly inspect the mill, its fixtures, equipment, and/or appurtenances attached thereto regarding risks associated with hydrogen sulfide;

e) Failing to provide adequate and/or timely warnings regarding risks of hydrogen sulfide;

f) Failing to provide workers with adequate training regarding the creation, nature, and/or presence of hydrogen sulfide gas;

g) Providing workers with inadequate and/or faulty training regarding hydrogen sulfide and work procedures relating thereto;

h) Providing negligent and/or unreasonable industrial hygiene monitoring services and/or safety recommendations to workers regarding hydrogen sulfide;

i) Failing to provide and/or maintain adequate hydrogen sulfide engineering controls, H2S detectors and/or H2S alarms to protect workers from risks associated with hydrogen sulfide;

j) Creating, maintaining, and/or allowing an unreasonably dangerous condition to exist on the mill premises with regard to hydrogen sulfide gas at a time when Defendants knew of such risks;

k) Failing to provide or require adequate industrial hygiene and environmental equipment to reduce or eliminate the risks associated with hydrogen sulfide;

l) Failing to provide, recommend, and/or maintain proper ppe to protect workers from H2S gas;

m) Failing to properly design, construct, and/or install (and/or recommend same), facilities, equipment, alarms and/or detectors at the mill to reduce or eliminate risks of foreseeable hazards and/or emissions of hydrogen sulfide in accordance with applicable codes, standards, and regulations; and

n) Such other and further ways as will be shown at trial.

32.     Plaintiff would show that each of the foregoing acts of negligence on the part of Defendants individually or in combination with one another are a proximate cause and a substantial factor in the hydrogen sulfide toxicity-related death of Ryan Martin, decedent, and Plaintiff's damages set forth herein.

**Count 2: Sappi North America Defendants' and Control Defendants' Negligent Control of Sappi Cloquet Mill Operations and Facilities**

33.     Plaintiff hereby incorporates the foregoing paragraphs by reference as if fully set forth herein.

34.     Plaintiff would show that Defendants, Sappi Ltd., Sappi North America, Inc., Sappi Fine Paper America LLC, S.D. Warren Company, S.D. Warren Services Company, S.D. Warren Corporation, and S.D. Warren Alabama, LLC, John Doe "Sappi Fine Paper Entity(ies) I-X, John Doe "Sappi North America" Entity(ies) I-X, and John Doe "Sappi Fine Paper North America Entity(ies) I-X, (all, hereafter, collectively referred to as "the Sappi North America Defendants"), and/or the John Doe Entity(ies) With Control Over the Sappi Cloquet, Minnesota Mill's Budgets Relating to Engineering Controls & Safety Equipment Related to Hydrogen Sulfide Hazards And/Or Emissions I-X, (hereinafter, referred to as "the Control Defendants"), in control of Sappi Cloquet, LLC's finances, budget, equipment, and/or premises managed and exercised extraordinary and substantial control over Sappi Cloquet, LLC including but not limited to

extraordinary control over budgetary and financial decisions with regard to the purchase, installation, construction, and/or maintenance of equipment, infrastructure, products, and/or process safety management decisions designed to contain and/or detect hydrogen sulfide gas and/or protect workers from hydrogen sulfide gas.

35.     In this regard, Plaintiff would show that the Sappi North America Defendants and/or the Control Defendants were negligent in the exercise and control over Sappi Cloquet mill employees in failing to authorize or approve adequate funds for health and safety of the Cloquet mill employees including but not limited to: a) funds for adequate safety training relating to safety hazards of hydrogen sulfide b) funds for proper and adequate engineering controls and personal protective equipment for work around hydrogen sulfide; c) funds for the development of adequate safety procedures and controls for work that was known to generate hydrogen sulfide gas; d) funds for adequate and timely preventative maintenance and/or repair or replacement of obsolete and dangerous equipment and processes to reduce risks associated with hydrogen sulfide gas; ; e) funds for adequate policies and preventative procedure development, and/or equipment regarding isolation of hazardous processes and/or equipment relating to hydrogen sulfide gas.

36.     The Sappi North America Defendants and/or the Control Defendants owed a duty to Plaintiff and other Cloquet mill employees to act reasonably in their management and exercise of their extraordinary control in financial decision-making affecting the health and safety of said employees. Said Defendants breached their duty by failing to authorize and/or approve the funds necessary to provide adequate and appropriate training, engineering controls, and personal protective equipment and the funds required to ensure proper maintenance and inspection of the equipment and infrastructure designed to protect workers like Ryan Martin from hydrogen sulfide gas.

37.     Said Defendants' failures in the management and extraordinary control of the mill's budget and operations regarding worker safety and protection from hydrogen sulfide gas constitute negligence and such negligence is a proximate cause of Ryan Martin's death.

**Count 3: The Sappi North America Defendants' and John Doe Undertaking Defendants' Negligent Undertaking**

38.     Plaintiff hereby incorporates all preceding paragraphs in this Complaint as if fully set forth herein.

39.     Plaintiff would show that the Sappi North America Defendants and/or the John Doe Entity(ies) Who Assumed Duties for Worker Health and Safety Regarding Hazards of Hydrogen Sulfide Gas I-X (hereafter, referred to as "John Doe Undertaking Defendants"), independently and/or acting by and through their affiliates and subsidiaries undertook control, in whole or part, of the Sappi Cloquet mill's finances relating to certain budgetary matters, including matters of health and safety, repair and maintenance of equipment and facilities, designed and/or intended to protect workers from hydrogen sulfide gas such as that involved in the occurrence made the basis of this suit, training and education of mill workers, including Ryan Martin, regarding hazardous hydrogen sulfide gas and processes in the mill known to produce hydrogen sulfide gas.

40.     Plaintiff would further show that safety and industrial hygiene personnel from Sappi North America, Inc's corporate offices undertook the obligation at the Cloquet mill to provide health and safety recommendations, training, warnings, and process safety management regarding hydrogen sulfide and hazardous processes and work practices associated therewith.

41.     As a result of this undertaking, Plaintiff would show that the Sappi North America Defendants and/or John Doe Undertaking Defendants, and/or affiliated companies and/or

subsidiaries are liable for negligence pursuant to the Restatement (Second) of Torts §324A having failed to exercise ordinary care in fulfilling their undertaking in a reasonable manner.

42.     Plaintiff would show that §324A provides that "*One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.*"

43.     The Sappi North America Defendants and/or John Doe Undertaking Defendants voluntarily undertook control, in whole or part, of the Cloquet mill's budget and/or finances, including financial decisions effecting the safety, protection, and working conditions for mill employees and maintenance of equipment. Said Defendants failed to exercise reasonable care in this undertaking, failing to approve, budget, and/or administer the funds necessary for a safe work environment for mill employees.

44.     Said Defendants further voluntarily undertook to provide industrial hygiene and safety services for the mill employees with respect to worker protection from hydrogen sulfide gas with was relied upon by management and employees at the Sappi Cloquet mill.

45.     Plaintiff would show that said Defendants' conduct violated the Restatement (Second) of Torts §324A. Such violation proximately caused the death of Ryan Martin and the Plaintiff's damages as alleged herein.

## DAMAGES

46.     Plaintiff would show that as a direct and proximate result of the Defendants' negligence and other conduct, Ryan Martin suffered a horrible death due to hydrogen sulfide poisoning and that the Plaintiff herein have suffered general, special, incidental, and consequential damages in an amount that will be fully set forth at the time of trial. Such damages include but are not limited to survival and wrongful death damages in the past and that will continue indefinitely into the future for an undetermined amount of time, including:

a)  Ryan Martin's physical pain and suffering;

b)  Ryan Martin's mental anguish and emotional distress;

c)  The reasonable value of Ryan Martin's medical expenses;

d)  Ryan Martin's lost earnings and loss of earning capacity;

e)  Ryan Martin's funeral expenses;

f)  Ryan Martin's death;

g)  The past and future damages suffered by the statutory heirs and wrongful death beneficiaries of Ryan Martin, deceased, including but not limited to:

   i.   Loss of consortium and companionship damages;

   ii.  Loss of inheritance damages;

   iii. Loss of enjoyment of life;

   iv.  Pecuniary damages;

   v.   Mental anguish and emotional distress;

   vi.  Medical expenses;

   vii. Travel-related expenses;

   viii. Loss of support, advice, guidance, love, and affection;

ix.   Out of pocket expenses;

h)   And all other elements that will be shown at the time of trial including but not

limited to ordinary, incidental, and/or consequential damages that could reasonably

be anticipated to arise out of the circumstances.

## JURY DEMAND

47.     Plaintiff hereby respectfully demands a jury trial on all issues and claims so triable

## PRAYER FOR RELIEF

48.     WHERE PREMISES CONSIDERED, the Plaintiff prays for judgment against

Defendants as follows:

1)   Ordering compensation for all general, special, incidental, and consequential

damages suffered by Plaintiff as a result of Defendants' conduct and death of Ryan

Martin;

2)   Ordinary statutory pre-judgment and post-judgment interest;

3)   Awarding reasonable attorneys' fees and costs to the fullest extent allowed by law;

and

4)   Granting all such additional and/or further relief at law and/or in equity as this Court

deems just and equitable.

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in a reasonable sum in excess of Seventy -Five Thousand Dollars ($ 75,000.00), together with her costs and disbursements herein and allowable interest.

**PLAINTIFF DEMANDS A JURY TRIAL FOR ALL OF THE ISSUES AND CAUSES PLEADED HEREIN.**

ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211 to the party against whom the allegations in this pleading are asserted.

Dated: May 14, 2020

By: _____

Eric W. Beyer, #0284518
Attorney for Plaintiff
**SiebenCarey, P.A.**
11 East Superior Street, Suite 240
Duluth, MN 55802
eric.beyer@knowyourrights.com

*Attorneys for Plaintiff*