UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jill Gordon, as Trustee for the Next of Kin of Ryan Martin, deceased,<br><br>        Plaintiff,<br><br>v.<br><br>Sappi North America, Inc.,<br><br>        Defendant. | No. 20-cv-1167 (KMM/JFD)<br><br>**ORDER** |

Plaintiff Jill Gordon alleges that Defendant Sappi North America, Inc. ("Sappi North America"), acted negligently, resulting in the death of her brother, Ryan Martin. She seeks to recover damages against Sappi North America. Sappi North America seeks summary judgment regarding Ms. Gordon's claims. For the reasons that follow, Sappi North America's motion for summary judgment is granted, and the claims against Sappi North America are dismissed with prejudice.

**I.    Background**[1]

In 2018, Ryan Martin was employed at the paper mill owned by Sappi Cloquet, LLC ("Sappi Cloquet"), a wholly owned subsidiary of Sappi North America. While working at the Sappi Cloquet mill, Mr. Martin died from exposure to hydrogen sulfide gas.

---

[1]     In their briefs, the parties discuss additional facts regarding what happened to Mr. Martin. However, those discussions are not relevant to the legal issue before the Court, so further exploration of the factual record is not required at this stage.

Ms. Gordon initiated this lawsuit as trustee for Mr. Martin's next of kin, seeking damages against Sappi Cloquet and Sappi North America, among others. Ms. Gordon has since elected to recover workers' compensation benefits from Sappi Cloquet, and voluntarily dismissed her claims against it and some of the other entities. [ECF Nos. 103, 135, 136, 180, 201-7.]

## II.    Summary Judgment Motion

The parties agreed to allow Sappi North America to bring this limited summary judgment motion to determine whether, as a matter of law, Ms. Gordon may pursue negligence claims against Sappi North America after she has recovered against Sappi Cloquet under the Minnesota Workers' Compensation Act ("MWCA"). As explained below, the Court finds that Sappi North America is entitled to judgment as a matter of law.

### A.    Legal Standard for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must first demonstrate that the material facts are not genuinely in dispute. *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 877 (8th Cir. 2020). A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts

exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). Summary judgment is proper where the non-moving party fails "'to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 844 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 322–23).

A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

### B. Timeliness

As an initial matter, Ms. Gordon argues that because Sappi North America did not raise the MWCA's election-of-remedies bar as an affirmative defense in its Answer, any attempt to do so now is untimely. The Court disagrees. While Federal Rule of Civil Procedure 8(c) generally requires a party responding to a pleading to "affirmatively state any . . . affirmative defense," the Eighth Circuit "ha[s] held that '[w]hen an affirmative defense' is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not fatal.'" *First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 622 (8th Cir. 2007) (quoting *Financial Timing Publ'ns,*

3

*Inc. v. Compugraphic Corp.,* 893 F.2d 936, 944 n.9 (8th Cir. 1990)). Here, while Sappi North America did not expressly invoke the election-of-remedies provision as an affirmative defense, it did reference the MWCA and acknowledge that it is Sappi Cloquet's parent company, both of which suggested that the defense might be coming. More critically, Ms. Gordon does not claim to have been unfairly surprised or prejudiced by Sappi North America raising the bar as a defense at this juncture, and it cannot have been a surprise to see it in a case where workers' compensation benefits have been accepted. *See id.* at 623. Indeed, it has been discussed previously, and was raised in an earlier Motion to Dismiss. [ECF No. 198.] And Ms. Gordon stipulated to Sappi North America bringing this limited summary judgment motion specifically to raise the issue. [ECF No. 121.] The Court declines to avoid consideration of this important legal issue because it was not listed as an affirmative defense in Sappi North America's Answer.

      C.      **The Minnesota Workers' Compensation Act**

The MWCA allows a decedent's dependents to recover damages from either the decedent's employer that is liable for benefits or the other party legally liable for damages, "but not against both." Minn. Stat. § 176.061, subd. 1. Here, the election-of-remedies provision precludes Ms. Gordon's claims against Sappi North America if it can demonstrate that it and Sappi Cloquet were:

> (a) insured in accordance with the MWCA at the time of Mr. Martin's death; and

> (b) "engaged, in the due course of business in, (1) furtherance of a common enterprise, or (2) in the accomplishment of the same or related purposes in operations on the premises where the injury was received at the time of the injury";

> and further establish that

4

(c) Mr. Martin's estate has previously elected to recover in workers' compensation. *Id.,* subd. 4.

There is no dispute that the first and third elements of the election-of-remedies bar are satisfied because Sappi Cloquet and Sappi North America shared the same insurance policy, and Mr. Martin's estate has recovered workers' compensation benefits against Sappi Cloquet. [ECF Nos. 201-7, 213-13.] Instead, the disputed issue is whether Sappi North America's relationship with Sappi Cloquet satisfies the second element of the election-of-remedies provision—whether the two companies formed a common enterprise or worked together for the same or related purposes in operations at the Cloquet mill.

**The Same or Related Purposes[2]**

Sappi North America seeks to invoke the election-of-remedies bar because it alleges it and Sappi Cloquet were "engaged, in the due course of business in, . . . the

---

[2]   Sappi North America does not argue that it also satisfies the "common enterprise" prong of the statute, perhaps because this prong has historically been interpreted to require that both entities have employees working together on site. *See, e.g., McCourtie v. U.S. Steel Corp.*, 93 N.W.2d 552 (Minn. 1958); *Urbanski v. Merchs. Motor Freight, Inc.*, 57 N.W.2d 686 (Minn. 1953); *Gleason v. Geary*, 8 N.W.2d 808 (Minn. 1943). However, as the Court explores in greater detail below, it is not clear that this requirement applies in the same way to corporate entities that share a parent-child, or vertical, relationship as it does to separate business entities that simply work together on a project. Nonetheless, because the Court agrees that Sappi North America and Sappi Cloquet satisfy the "same or related purposes in operations on the premises" test, it need not address whether the common-enterprise prong could also be satisfied.

accomplishment of the same or related purposes in operations on the premises" when Mr. Martin was killed. Minn. Stat. § 176.061, subd. 4. The Court agrees.

First, the plain language of the statute supports its application in this instance. The election-of-remedies bar applies if Sappi North America can demonstrate that it and Sappi Cloquet were "engaged, in the due course of business, . . . in the accomplishment of the same or related purposes in operations" at the Sappi Cloquet mill when Mr. Martin died. *Id.* On its face, the statute merely requires that the Sappi North America and Sappi Cloquet worked toward the same or similar business purposes. Indeed, Sappi Cloquet and Sappi North America, as parent company and wholly owned subsidiary, were by their very nature working in concert at the Sappi Cloquet mill for "the accomplishment of the same or related purposes" when Mr. Martin died.

Although there are relatively few cases applying this provision, the jurisprudence that does exist indicates that the two corporate entities here readily satisfy the requirement. In analyzing whether entities have the same or related purposes, Minnesota courts examine whether there was a "conceivable connection" between the parties or whether their relationship was "merely coincidental." *Anderson v. Interstate Power Co.*, 263 N.W. 612, 615 (Minn. 1935). Nearly a century ago, the Minnesota Supreme Court "limited the tort liability of a third party engaged in a common enterprise, or in the accomplishment of the same or related purposes with the employer, to the amount that an employee could have collected from his or her own employer." *Minnesota Brewing Co. v. Egan & Sons Co.*, 574 N.W.2d 54, 61 (Minn. 1998); *see Rasmussen v. George Benz & Sons,* 210 N.W. 75, 77

(Minn. 1926). Under this framework, it is impossible to imagine that a parent company and its wholly owned subsidiary lack the required "conceivable connection."

None of Ms. Gordon's arguments to the contrary undermine the Court's reading of the statute. First, Ms. Gordon suggests that the two different prongs of the statute—"common enterprise" and "same or related purposes"—have been merged into a single test that focuses solely on the common-enterprise question. And she alleges that, because two entities must both have employees working at the same location in order to satisfy the common-enterprise requirement, Sappi North America cannot invoke the workers' compensation bar. [Pl.'s Br. [ECF No. 224] at 21–26.] The Court disagrees.

Most critically, Ms. Gordon's reading of the statute is simply incorrect. It is true that a 1953 Minnesota Supreme Court case, *Crawford v. Woodrich Const. Co.*, 57 N.W.2d 648 (Minn. 1953), suggested that the two distinct prongs in the statute had been functionally merged into a single test. The plaintiff in *Crawford* worked as an inspector for the state, and was injured on a jobsite when an employee from the defendant construction company ran over him with a truck. *Id.* at 650. The Minnesota Supreme Court determined that the state—plaintiff's employer—and the construction company were not "engaged in the due course of business on the [s]ame project" nor that "their employees were working together in the performance of [s]uch project in a manner which exposed them to the same or similar hazards at the place and time of injury." *Id.* at 653-54. Moreover, the court further determined that "the statutory phrases 'common enterprise' and the 'accomplishment of the same or related purposes' no longer have an independent significance and that, in recognition of the legislative intent, [t]hey have been wholly superseded by, and have been

merged in, a new rule born of statutory construction." *Id.* at 653. Thus, the court affirmed a jury's damages award against the construction company, despite the fact that plaintiff received workers' compensation benefits from his employer.

But the Minnesota courts have since made clear that both prongs of the test remain viable, and that an entity can invoke the election-of-benefits provision either by demonstrating a common enterprise, or by showing engagement in a same or related purpose. In 1998, the Minnesota Supreme Court recognized that "[i]n addition to situations where an employer and a third party are engaged in furtherance of a common enterprise, the election of remedies provision also applies to circumstances where an employer and a third party are engaged in the accomplishment of the same or related purposes." *Minnesota Brewing Co.*, 574 N.W.2d at 61 n.10. Indeed, as recently as 2017, the Minnesota Supreme Court referenced the "same or similar purposes" prong of the MWCA's election-of-remedies bar. *See Kelly v. Kraemer Constr., Inc.*, 896 N.W.2d 504, 513 n.2 (Minn. 2017).

Moreover, the *Crawford* case was decided decades ago, during a time that the MWCA was read to more definitively favor workers. Indeed, for many years workers' compensation law in Minnesota was "construed most liberally in favor of the injured workman." *McCourtie*, 93 N.W.2d at 559. However, this early pro-plaintiff leaning was altered by statutory amendment in 1983, as the Minnesota legislature clarified that "[q]uestions of law arising under [the MWCA] shall be determined on an *even-handed basis*." *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 893 (Minn. 1996) (quoting Minn. Stat. § 176.021, subd. 1a (1994)) (emphasis in *O'Malley*); *see Owens ex rel. Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 735 (Minn. 2000). Considering the more balanced approach

8

of the current framing of the statute and of the caselaw interpreting it, allowing Ms. Gordon to recover from Sappi North America and Sappi Cloquet would be contrary to the election-of-remedies provision.

Additionally, Ms. Gordon's argument that the test requires a showing that employees from each company work together at a single location overstates the clarity of the law in two ways. First, as explored above, that requirement appears to derive from cases interpreting only the "common enterprise" portion of the test, and not the same-or-related-purposes prong. *See, e.g.*, *O'Malley*, 549 N.W.2d at 894–97; *Crawford*, 57 N.W.2d at 652–53. Moreover, the Court is doubtful that having employees together on-site is necessary to invoke the election-of-remedies provision when the two entities at issue are a parent company and its wholly owned subsidiary, as is the case here. If Ms. Gordon's interpretation were correct, then a corporation that had no meaningful relationship to an employer but worked together with that employer on a project would be afforded full protection under the workers' compensation bar, while a parent company would be fully exposed for double-recovery—this reading makes little sense.

Ms. Gordon next argues that Sappi North America's motion must fail because no court has ruled that the election-of-remedies bar applies in a parent-child corporate relationship. It is true that neither the parties nor the Court have located a case similar to this one involving a vertical relationship between a parent and a wholly owned subsidiary. However, the Court disagrees that this paucity of caselaw supports Ms. Gordon's position. There is surprisingly little authority exploring the application of § 176.061, subd. 4, but that which exists focuses on much more difficult cases than this. Indeed, it is a closer and

more fact-bound question whether two unrelated businesses share the necessary same or similar purposes to invoke the bar than whether two intricately related corporate entities do. Given the plain language of the statute, the Court suspects that most litigants would assume that a parent corporation had the necessary connection to its wholly owned subsidiary to invoke the bar, and would be unlikely to pursue relief against such defendants after settling a MWCA claim against its corporate progeny.

Moreover, the Court is persuaded by the analogous authority cited by Sappi North America that shines light on the way vertical corporate relationships, such as that between the Sappi entities here, are typically treated. *See e.g.*, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest.") (evaluating the parent-subsidiary relationship in a subrogation context); *see also Clark v. United Techs. Auto., Inc.*, 594 N.W.2d 447, 452 (Mich. 1999) (explaining that Michigan worker's compensation statute prohibits a double recovery when two companies share a vertical relationship). The very purpose of the election-of-remedies provision is to "prevent [a plaintiff] from receiving a double recovery," *Schmidt v. Safeway Steele Prods.*, Nos. C6-94-14, C3-94-97, 1994 WL 396365, at *2 (Minn. Ct. App. Aug. 2, 1994), and that goal would be undermined by precluding its application in a case like this.

Finally, Ms. Gordon's position creates an untenable tension in this litigation. In order for Sappi North America to have liability for Mr. Martin's death, Ms. Gordon will have to establish that Sappi North America took some actions that make it responsible, and she attempts to do so by emphasizing that it exercised significant control over Sappi Cloquet in critical ways, including by controlling its budget and its operations that impact

worker safety. [Am. Compl. [ECF No. 159] ¶¶ 27, 30.] The Court finds it impossible to reconcile these allegations, even taken as true, with Ms. Gordon's current argument that the two entities were not working in service of a shared purpose.

In sum, the Court agrees with Sappi North America that it and Sappi Cloquet were engaged in the "same or related purposes in operations on the premises." Minn. Stat. § 176.061, subd. 4. When Ms. Gordon resolved her MWCA claim with Sappi Cloquet, Ms. Gordon relinquished her right to pursue this litigation against Sappi North America. Because there are no material factual disputes that bear upon this conclusion, summary judgment is appropriate.[3]

---

[3] The Court notes that Ms. Gordon's recently added product-liability claim does not prevent the Court from granting summary judgment because the MWCA prevents her double recovery regardless. Here, "[Sappi North America's] obligation as employer to provide a safe working environment and its obligation as manufacturer and distributor to produce safe materials are closely intertwined, and so the obligations imposed on [it] as manufacturer and distributor are not independent of those imposed on [it] as employer." *Kaess v. Armstrong Cork Co.*, 403 N.W.2d 643, 645 (Minn. 1987).

## IV. Order

Based on the discussion above, **IT IS HEREBY ORDERED** that Sappi North America's motion for summary judgment [ECF No. 214] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: April 7, 2023

                                          *s/ Katherine Menendez*
                                          Katherine Menendez
                                          United States District Judge